Barrett, J.
This action is brought upon an alleged agreement by the National Bank of the Republic to pay certain drafts in favor of the firm of Lamborn & Gray, drawn upon and accepted by the Cleveland, Youngstown and Pittsburg Railway Company. The plaintiffs sue as the assignees of Lamborn & Cray. The interview upon which they rely as constituting the contract took place on November 8, 1883, between Mr. Lamborn and Mr. Ford, the president of the bank, .who was at the same time also president of the railroad company. Similar drafts had previously been paid at the bank, but just prior to this date there had been “some little hitch” in the matter, according to Mr. Lamborn, and he came from Ohio to New York, by way of precaution, and went to see Mr. Ford at the bank. He asked Mr. Ford what the trouble was, and why the drafts could not be taken care of at sight. Mr. Ford responded that there was trouble in the bank, among the bank people and himself and Mr. Buckley, who was the vice-president of the bank. He said the bank directors or some of the directors were dissatisfied with the advances to the railroad, and he asked Mr. Lamborn as a favor to him and Mr. Buckley, who were “in some trouble with the bank people,” to draw as lightly, or sell exchange as lightly as possible against the credit of his firm in the bank.
Mr. Ford then went on to say, that the bank held a large quantity of the bonds of the Cleveland, Youngstown and Pittsburg Railway Company, the value of which depended upon the line being completed and ironed to a certain point jand that it was within a few weeks of completion; that a *40 man was in Europe attempting to negotiate the bonds, and that he desired Lamborn and Gray to make further advances to the railroad company as they had previously, drawing drafts, and accompanying these drafts with vouchers approved by the officers of the railway company, and sending them to the Bank of the Republic for collection, and they would take care of them to the last dollar. He used the words, “ to the last dollar.”
Mr. Lamborn further testifies that Mr. Ford said he might possibly lose his place, in this trouble with the bank people.
It may be of some importance to note that Mr. Bergholz, the vice-president of the railroad company was present during part of the conversation.
If an agreement to pay the drafts which were dishonored is to be found anywhere in the case, it must be in this interview.
In the first place, it' may well be doubted whether Mr. Ford in giving Mr. Lamborn the positive assurance that if he sent on his drafts to the bank for collection “ they would take care of them to the last dollar,” was not speaking of himself as president of the railroad company, and of Mr. Bergholz, as vice- president, rather than in his character as president of. the bank. But assuming that he professed to represent the bank, there is not only an entire lack of evidence of his authority to make the contract in question in its behalf, but there is proof of a state of facts disclosed to the plaintiff’s assignors which precluded them from relying upon any implied authority on his part. That the directors had already made trouble for Mr. Ford by reason of the advances to the Cleveland, Youngstown and Pittsburg Railway Company was a fact distinctly communicated to Mr. Lamborn, and was notice to him that further transactions of the same nature would not be sanctioned. Having this information, if he chose to rely upon the promise of Mr. Ford, he took the risk of the existence of actual authority to make such promise in behalf of the bank, and his firm could not recover thereon without proving an authorization in fact.
The complaint was properly dismissed, and the judgment should be affirmed with costs.
Macomber, J., concurs.